**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MID-CONTINENT CASUALTY
COMPANY,

                **Plaintiff,**

-vs-                                      Case No. 6:09-cv-1065-Orl-31GJK

FRANK CASSERINO CONSTRUCTION,
INC., and CED CONSTRUCTION
PARTNERS, LTD.,

                **Defendants.**
_____

CED CONSTRUCTION PARTNERS,
LTD.,

                **Counter Claimant**

vs.

MID-CONTINENT CASUALTY
COMPANY,

                **Counter Defendant.**
_____

# ORDER

This matter came before the Court without oral argument upon consideration of cross-motions for partial summary judgment filed by Plaintiff-Counterdefendant Mid-Continent Causality Company ("Mid-Continent") (Doc. 30) and Defendant-Counterclaimant CED Construction Partners, Ltd. ("CED") (Doc. 35); the parties' respective responses in opposition thereto (Docs. 39 and 40); and the parties' replies (Docs. 40 and 42).

**I. Overview**

Mid-Continent brought this action for declaratory relief to determine whether it has a duty to defend and indemnify its insured, Frank Casserino Construction, Inc. ("Casserino"), in two underlying state court actions brought by CED against Casserino.[1] (Doc. 1). CED counterclaimed for identical relief. (Doc. 9 at 4-6).

In its motion, Mid-Continent contends that it has no duty to indemnify Casserino.[2] The only issue raised in Mid-Continent's motion is whether there was an "occurrence" during the relevant policy period. According to Mid-Continent, it has no duty to indemnify Casserino because there was no "occurrence" during the policy period. Mid-Continent therefore requests a judgment as a matter of law on its indemnification claim. CED has cross-moved for essentially identical relief, contending, *inter alia*, that there was an "occurrence" during the policy period.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**II. Background[3]**

**A. The Underlying Litigation**

The underlying litigation between CED and Casserino involves two residential building projects: the Water View Club apartment building in Orange County, Florida, and the Tierra Vista apartment building in Osceola County, Florida. In both projects, CED, as the general contractor,

---

[1]Casserino has failed to appear in this case (its owner died and the corporation was dissolved in 2003). Rather than enter a default judgment against Casserino, however, the parties have urged – and Court has permitted – Mid-Continent and CED to litigate the existence of coverage under the CGL policies that Mid-Continent issued to Casserino. (Doc. 24, citing *Monticello Insurance Co.*, Case No. 05-CV-548, 2005 WL 3019241 (M.D. Fla. Nov. 10, 2005)). *See also, e.g.*, *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941).

[2]Mid-Continent has not moved for summary judgment as to its duty to defend.

[3]With very few exceptions, as noted, *infra,* the material facts are not in dispute. (Doc. 39 at 3).

subcontracted with Casserino to perform building wrap, vinyl siding, roofing and certain accessories work. The Water View buildings were completed in July, 1998, and the Tierra Vista buildings were completed in December, 1998.

In later part of 2004, CED was notified by the owner of possible water intrusion in the Water View and Tierra Vista buildings. In January, 2005, CED inspected the buildings and discovered water damage. According to CED's expert, however, there were latent defects in the buildings that, upon a prudent engineering investigation, would have been discernable "about the time of the first measurable rains after construction was concluded in 1998." (Doc. 36-1, ¶¶ 8 and 9).[4] It is undisputed that neither the owners of the buildings nor CED discovered any water damage until at least 2004.

On March 22, 2006, CED sued Casserino and other subcontractors in two separate state court actions, alleging, *inter alia*, that the water intrusion in the buildings was caused by Casserino's construction defects.[5] Those actions remain pending and judgment has not been entered on CED's claims against Casserino. Mid-Continent, however, has defended (and continues to defend) Casserino in both actions under a reservation of rights.

---

[4]Water intrusion damage from these latent defects, however, was not readily discernable during the period of the CGL policies and could only have been discovered by the removal of certain components (e.g., building wrap, roofing and siding). (Doc. 36-1 at 2).

[5]*See CED Constr. Partners Ltd. vs. Chancey Metal Prods., Inc. et al.*, Case No. 2006-CA-2410-O, Ninth Judicial Circuit in and for Orange County, Florida (Fla. Cir. Ct. 2006) (concerning the Water View project); *CED Constr. Partners Ltd. vs. Southeast Stairs & Rails, Inc.*, Case No. 2006-CA-616-CI, Ninth Judicial Circuit in and for Osceola County, Florida (Fla. Cir. Cit. 2006) (concerning the Tierra Vista project).

**B. The CGL Polices**

Mid-Continent issued four CGL polices to Casserino. Each policy was in effect for a year, and between August 30, 1998 through August 30, 2002 (the last effective date of the final policy), there were no lapses in coverage. The policies contained identical language and, in pertinent part, provided coverage for:

> SECTION I – COVERAGES. . . .
> PROPERTY DAMAGE LIABILITY.
>
> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. . . .
>
>    b. This insurance applies to . . . "property damage" only if: . . .
>
>       (2) The . . . "property damage" occurs during the policy period. . . .

(Doc. 30-8 at 1).

The policies contained the following exclusions:

> 2. Exclusions
>
>    This Insurance does not apply to:. . .
>
>    j. Damage to Property
>
>       "Property damage" to:. . .
>
>       (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
>       (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. . . .

> > Paragraphs . . . (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.[6]
>
> > Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".
>
> > l. Damage to Your Work
>
> > > "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> > > This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
>
> > m. Damages to Impaired Property. . . .
>
> > > "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> > > (1) A defect, deficiency, inadequacy or dangerous condition in . . . "your work"; or
>
> > > (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> > > This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to . . . "your work" after it has been put to its intended use.

(Doc. 30-8 at 1-4).

Finally, the policies contained the following definitions:

> SECTION V – DEFINITIONS. . . .
>
> 7. "Impaired property" means tangible property, other than . . . "your work", that cannot be used or is less useful because:
>
> > a. It incorporates . . . "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

---

[6]The parties have not introduced any evidence concerning the existence of a "sidetrack agreement."

> b. You have failed to fulfill the terms of a contract or agreement.
>
> 12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> 14. "Products-completed operations hazard:"
>
>> a. Includes all . . . "property damage" occurring away from premises you own or rent and arising out of . . . "your work". . . .
>
> 15. "Property damage" means:
>
>> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>>
>> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> 19. "Your work" means:
>
>> a. Work or operations performed by you or on your behalf; and
>>
>> b. Materials, parts or equipment furnished in connection with such work or operations.
>
>> "Your work" includes:
>
>> a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>>
>> b. The providing of or failure to provide warnings or instructions.

(Doc. 30-8 at 11-13).

## III. Applicable Law

### A. Summary Judgment

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d

454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59.

**B. Florida Insurance Law**

In Florida, an insurer's duty to defend is distinct from, and broader than, the duty to indemnify. *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (citing *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813-14 (Fla. 1st DCA 1985)). The duty to defend is determined by examining the allegations in the underlying complaint against the insured. *Id.* (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977)); *see also State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n. 3 (Fla. 1998). The insurer must defend when the complaint alleges facts that fairly and potentially bring the suit within coverage. *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005).

An insurer's duty to indemnify is narrower than its duty to defend and must be determined by analyzing the policy coverages in light of the actual facts in the underlying case. *See*, *e.g.*, *CTC Dev. Corp.*, 720 So. 2d at 1077 n. 3 (citing *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)). In construing insurance policies, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (internal citations omitted). Exclusionary clauses are typically read strictly and in a manner that affords the insured the broadest possible coverage. *Indian Harbor Ins. Co. v. Williams*, 998 So. 2d 677, 678 (Fla. 4th DCA 2009).

In Florida, the insured has the burden of proving that a claim is covered by the insurance policy. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997) (internal citations omitted). Once the insured shows coverage, the insurer has the burden of proving an exclusion. *Id*. If there is an exception to an exclusion, however, then the burden returns to the

insured to prove the exception and show coverage. *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. 3d DCA 2005).

**IV. Discussion**

Although the parties agree that there has been an "occurrence" caused by "property damage" within the meaning of the CGL policies, they dispute the nature of that "property damage" and when it occurred.

### A. Nature of the Property Damage

Mid-Continent contends that the damage to the buildings caused by water intrusion constitutes the "property damage" at issue in this case. CED, however, contends that Casserino's faulty workmanship, in itself, also constitutes "property damage." (Doc. 35 at 1 and 4).

CED's contention is flawed for at least two reasons. First, assuming Casserino's workmanship constitutes "property damage," then the damage occurred (and would have continued to occur) as of the date the buildings were completed. As noted, *supra*, the Water View buildings were completed sometime in July, 1998 – at least a month before Mid-Continent issued its first CGL policy to Casserino. Second, and more importantly, Casserino's faulty workmanship – standing alone – is specifically excluded from coverage.[7] Although there appear to be a number of potentially applicable exclusions, the exclusion in "j. Damage to Property" clearly excludes coverage for "part of any property that must be restored, repaired or replaced *because "your work" was incorrectly performed on it. . . .* (Doc. 30-8 at 3-4) (emphasis added).[8]

---

[7]While CED addressed some of the policy exclusions in its motion, Mid-Continent's motion is predicated solely on the date of the occurrence – not on any applicable exclusion. To the extent, then, that the Court addresses the exclusions in this Order, it does so only with respect to CED's motion.

[8]Although the "j. Damage to Property" exclusion does not apply to the "Products-completed operations hazard," the "Products-completed operations hazard" exception concerns only "property

-9-

Upon review, the Court finds that the "property damage" at issue here concerns the physical damage to the buildings caused by water intrusion – not Casserino's allegedly defective workmanship in itself. *Accord Auto Owners Inc. Co. v. Tripp Constr., Inc.*, 737 So. 2d 600, 601 (Fla. 3d DCA 1999) (CGL policies "only protect against . . . damages . . . to property which might *result from* the defective workmanship. The policy does not afford coverage for the repair of the defective workmanship itself") (emphasis added); *see also LaMarche v. Shelby Mutual Ins. Co.*, 390 So. 2d 325, 326 (Fla. 1980); *but see J.S.U.B., Inc. v. U.S. Fire Ins. Co.*, 906 So. 2d 203 (Fla. 2d DCA 2005), *aff'd* 970 So. 2d 871, 891 (Fla. 2007) (noting, however, that "we distinguish but do not recede from *LaMarche* because that case concluded, based on the policy exclusions, that there was no coverage"). Accordingly, although Casserino's allegedly defective workmanship may have caused water intrusion (and the resulting "property damage" to the buildings), its workmanship alone does not constitute "property damage" under the CGL policies.

### B. Date of Occurrence

For there to be coverage under a CGL policy, there must be a covered loss that occurs within the policy period. Although an "occurrence" need not necessarily take place during the policy period, "property damage" must occur during the policy period. (Doc. 30-8 at 1); *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F. Supp. 2d 1248, 1265 (M.D. Fla. 2006); *see also Trizec Properties, Inc. v. Biltmore Const. Co.*, 767 F.2d 810, 813 (11th Cir. 1985) ("[I]t is the damage itself which must occur during the policy period for coverage to be effective").

---

damage" "*arising out of* 'your work'" (Doc. 30-8 at 12) (emphasis added) – it does not concern "your work" itself.

There are four theories governing when "property damage" occurs under a CGL policy: (1) exposure; (2) manifestation; (3) continuous trigger; and (4) injury-in-fact. *Auto Owners Ins. Co.*, 227 F. Supp. 2d at 1266.

> Under the exposure theory, property damage occurs upon installation of the defective product. Under the manifestation theory, property damage occurs at the time damage manifests itself . . . . The continuous trigger approach defines property damage as occurring continuously from [the] time of installation until the time of discovery. And injury-in-fact (which is also referred to as damage-in-fact) . . . is triggered when the property damage underlying the claim actually occurs.

*Id*. (internal citations omitted and emphasis removed).

In Florida, however, coverage under a CGL policy is triggered when property damage manifests itself, not when the negligent act or omission giving rise to the damage occurs. *See*, *e.g.*, *Assurance Co. of Am. v. Lucas Waterproofing Co., Inc.*, 581 F. Supp. 2d 1201, 1206 (S.D. Fla. 2008); *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 485 F. Supp. 2d 1302, 1309-10 (M.D. Fla. 2006); *North River Ins. Co. v. Broward County Sheriff's Office*, 428 F. Supp. 2d 1284, 1289 (S.D. Fla. 2006); *Auto Owners Ins. Co.*, 227 F. Supp. 2d at 1266; *Am. Motorists Ins. Co. v. Southern Sec. Life Ins. Co.*, 80 F. Supp. 2d 1280, 1284 (M.D. Ala. 2000) (applying Florida law); *Harris Speciality Chems., Inc. v. U.S. Fire Ins. Co.*, Case No. 3:98-CV-351, 2000 WL 34533982 at *12 (M.D. Fla. 2000); *Travelers Ins. Co. v. C.J. Gayfer's & Co.*, 366 So. 2d 1199 (Fla. 1st DCA 1979) (citing, *inter alia*, *Prieto v. Reserve Ins. Co.*, 340 So. 2d 1282 (Fla. 3d DCA 1977)); 31 FLA. JUR. 2D INSURANCE § 2451 (2d ed., current through Feb. 2010); *but see Trizec Properties, Inc.*, 767 F.2d at 813, n.6 (11th Cir. 1985) (rejecting manifestation theory in context of duty to defend, but noting that "We need not and do not decide whether [the insurer's] theory . . . that damages must manifest themselves . . . before coverage is triggered . . . is a correct or incorrect statement of the law in general"); *Commercial Union Ins. Co. v. R.H. Barto Co.*, 440 So. 2d 383 (Fla. 4th DCA

1983) (applying continuous trigger theory); *see also* 7 COUCH ON INSURANCE § 102:21 (3d. ed., current through 2009) (discussing competing theories and noting that "determining whether the triggering event has occurred during the policy period is not always a simple matter").

Here, then, CED has the burden of proving that "property damage" manifested prior to August 30, 2002. Consistent with that burden, CED has produced photographic evidence that reveals "property damage" caused by water intrusion in both the Water View and Tierra Vista buildings, (Doc. 36-2 at 33-45 and Doc. 36-3 at 35-60), and its expert has opined that damage from the water intrusion would have been visible at about the time of the first measurable rains after the completion of construction.

Mid-Continent, however, contends that CED's expert has no personal knowledge as to whether any damage from water intrusion was manifested during the policy period and that the damage was not "seen in fact" or "discovered" during the policy period. (Doc. 41 at 2-3, n. 3). "Therefore, at most [CED's] affidavit states an opinion, unsupported by any facts in the evidentiary record, as to when damage might have been 'discoverable' rather than when it manifest [sic] or was discovered." *Id.*

Upon review, Mid-Continent's motion will be denied. That no one saw or "discovered" damage caused by water intrusion during the policy period is of no moment. Under Florida's applicable "trigger" theory and the unambiguous language of the CGL policies at issue here, the only relevant question is whether physical injury to the buildings manifested itself during the period of coverage. CED's expert has opined that it did and there is sufficient – though perhaps disputable – evidence in the record to support that opinion. While Mid-Continent is free to attack CED's expert, Mid-Continent cannot simply label his conclusion an "opinion" and ignore his

findings[9] – especially where, as here, the only means by which CED can reasonably be expected to prove that there was "property damage" during the policy period is through expert testimony. Accordingly, there are disputed issues of fact that preclude summary judgment on Mid-Continent's motion.

Notwithstanding the foregoing, CED's motion will also be denied. CED requests the following relief in its motion:

> 1. CED requests this Court enter a partial summary judgment on Mid-Continent's complaint by ruling that:
>
>> a) *If proven by CED to exist*, the faulty workmanship of [Casserino], of which CED complains, is an "occurrence" under the subject policies,
>>
>> b) *If proven to exist and if proven* to have resulted from the occurrence, the damages to property of which CED complains constitute covered "property damage" under the subject policies,
>>
>> c) CED need only prove physical injury to the property, during the policy terms, to constitute covered property damage.
>
> 2. On the same bases and to the same extent, CED requests this Court enter a partial summary judgment in favor of CED on CED's counterclaim for declaratory relief.

(Doc. 35 at 1-2) (emphasis added). The relief CED requests is entirely speculative and based on an incomplete record. The underlying state court actions remain pending and no judgment has been entered on the claims against Casserino. Furthermore, as noted in Part IV, A, *supra*, Casserino's faulty workmanship, as a matter of law, cannot itself constitute an "occurrence" under the CGL policies. Finally, although the opinion of CED's expert supports (but by no means clearly establishes) that water intrusion caused "property damage" during the period of coverage,

---

[9] Pursuant to this Court's Case Management and Scheduling Order, "On or before the date established . . . for the filing of motions for summary judgment, any party seeking a ruling pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) . . . shall file an appropriate motion." Neither party timely filed a *Daubert* motion or requested a hearing regarding same, and Mid-Continent never contested the qualifications or opinion of CED's expert.

CED has not adduced sufficient evidence that Casserino's faulty workmanship was the cause of water intrusion or, more particularly, the "property damage" caused by the water intrusion at issue in the state court actions.[10] Accordingly, CED's motion will be denied.

**V. Conclusion**

For the foregoing reasons, it is **ORDERED** that Plaintiff-Counterdefendant Mid-Continent Causality Company's Motion for Partial Summary Judgment (Doc. 30) is **DENIED** and Defendant-Counterclaimant CED Construction Partners, Ltd.'s Motion for Partial Summary Judgment is **DENIED** (Doc. 35).

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 16, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[10]At most, CED's expert states in his affidavit that components installed by Casserino "concealed" the damage from the water intrusion. (Doc. 36-1 at 2-3). There is a significant distinction between workmanship that conceals defects caused by another subcontractor's faulty workmanship, and faulty workmanship that, in itself, causes damage from water intrusion. Although CED's expert provided a supplemental affidavit concluding that Casserino's defective installation of certain components caused "property damage . . . [to] the buildings' envelopes, such as structural framing," that conclusion is clearly conclusory – and unlike CED's expert opinion concerning the onset of the water intrusion damage – without sufficient support in the record.

-14-